# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

RAYMOND FARZAN,
    Plaintiff,

    v.

BRIDGEWATER ASSOCIATES, et al.,
    Defendants.

No. 3:16-cv-00935 (SRU)

## RULING AND ORDER

In the present employment discrimination lawsuit, the defendants, Bridgewater

Associates, LP, Iain Paine, Ryan Oberoi, and Jeffrey Welsh[1] (collectively, "Bridgewater"), and

Abyss Group, Inc.,[2] have moved pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6) to dismiss Raymond Farzan's claims that he was discriminated against and terminated

on the basis of his age, race, and religion in violation of Title VII of the Civil Rights Act of 1964,

the Age Discrimination in Employment Act of 1967 (ADEA), and the Connecticut Fair

Employment Practices Act (CFEPA). Bridgewater and Abyss contend that Farzan's Amended

Complaint fails to state claims upon which relief can be granted and also must be dismissed for

lack of subject matter jurisdiction. For the reasons set forth below, I grant Bridgewater's and

Abyss's motions. Because I conclude that further amendment of the complaint would be futile, I

deny leave to amend and dismiss Farzan's Amended Complaint with prejudice.

---

[1] Misidentified as "Jeffery Welch" in Farzan's complaint. *See* Am. Compl., Doc. No. 39, at ¶ 59.
[2] Abyss Group is now known as Torana Inc. I will continue to refer to it as Abyss Group, the name used in the Amended Complaint.

## I.       Standard of Review

A motion to dismiss for failure to state a claim is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). When deciding a motion to dismiss, I must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

Regarding a motion to dismiss under Rule 12(b)(1), the party who seeks to invoke a court's jurisdiction bears the burden of establishing that jurisdiction. *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). To survive a motion to dismiss for lack of subject matter jurisdiction, a plaintiff must allege facts

demonstrating that the plaintiff is a proper party to seek judicial resolution of the dispute, and

that the legal basis for the dispute allows it to be adjudicated in federal district court. *Id.*

## II.     Background

Raymond Farzan (born Reza Farzan) is "a 66 year[] old Muslim man . . . who was born

in Iran." Am. Compl., Doc. No. 39, at ¶ 1. He has worked as a "Business Analyst" or "Project

Manager" in the information technology departments of financial services companies. *Id.* at ¶ 2.

Farzan has incorporated "a one man organization," America's Consulting Enterprise, through

which he contracts out his services to different financial services firms. *See id.*

In late March of 2014, Farzan was contacted by a recruiter from Abyss Group about a job

at Bridgewater Associates, a major hedge fund. *See id.* at ¶¶ 9, 15. Farzan interviewed with

managers at Bridgewater and was offered a position, which he accepted. *Id.* at ¶¶ 17, 18. He then

spoke with his recruiter at Abyss, who (according to Farzan) told him "[he] would be working at

Bridgewater at least for 18 months" and "agreed on an hourly rate increase schedule" that

extended for over one year. *Id.* at ¶ 21. On April 9, 2014, Farzan signed a Professional Service

Agreement with Abyss, which stated that "Abyss or [Farzan] may terminate th[e] Agreement at

will at any time on [t]wo weeks prior notice." Ex. H to Am. Compl., Doc. No. 39, at 66, 68.

Farzan's time at Bridgewater proved unhappy. He received what he felt was unfair

criticism from his supervisor Iain Paine, as well as from two coworkers, Ryan Oberoi and Jeffrey

Welsh. For example, under Bridgewater's work culture of "radical transparency," Farzan's

supervisors initiated a feedback session over email on May 21, 2014, in which Paine expressed

his "concern" that Farzan "need[ed] to be net positive" and that he was "being overly cautious

and not pushing forward to really drive out requirements and understand/get context of what he

[was] doing." *See* Ex. S to Am. Compl., Doc. No. 39, at 106. Another Bridgewater employee,

3

Ruairi Powers, agreed that "Raymond seem[ed] to be very reactive" and "d[id] not seem

naturally curious to understand the domain he [was] operating in." *Id.* at 105. The next day,

Welsh added that he "expect[ed] [Farzan] to be assertively driving (active vs. passive)" and

observed that Farzan "seemed not to absorb things [they] discussed." *Id.*

On June 6, Oberoi replied to the previous email chain to add that he "ha[d] not seen

Raymond carry his weight, and be net positive for the team." *Id.* at 104. He wrote that "[the]

team [was] overall suffering because of the lack of a [Business Analyst] who [was] at the bar and

carrying things forward," and that he was "counting on Iain [Paine] to actively collect and

evaluate the feedback, provide transparency and take required action." *Id.* Farzan responded that

Oberoi's "statements [were] not based on facts" and complained that most of the team members

had spent fewer than 30 minutes with Farzan since he began work at Bridgewater. *See id.*

In addition to the emails—which he characterizes as "humiliating" and "publicly

blam[ing]," Am. Compl., Doc. No. 39, at ¶¶ 51 & 52—Farzan identifies in his Amended

Complaint a number of other negative experiences at Bridgewater. At one point, Paine "offered

[Farzan and two developers] alcohol drinks and [Farzan] refused, but the developers accepted."

*Id.* at ¶ 55. Farzan suspects that Farzan "continu[ing] to work" while Paine and the developers

drank "[m]aybe [was] why [Paine] thought [he] was not a good fit to his team." *Id.* Farzan also

claims that Welsh "made fun of [him] for his national origin, . . . called Iran that 'f**king

country' and . . . said 'Iranians are shitty people,'" *id.* at ¶ 60, and that "[o]nce Oberoi told [him]

in the lobby that [he] was an old Muslim and . . . did not belong [at] Bridgewater," *id.* at ¶ 67.

After those encounters and the critical emails, Paine spoke with Farzan on June 13, 2014,

and informed him that his last day would be June 27. *Id.* at ¶ 78. Farzan "strongly disagreed with

[Paine] and wanted to discuss [his] work with him, [but] he refused to spend more time with

[Farzan] in that meeting." *Id.* Farzan then called his recruiter at Abyss, who "[t]o [his] surprise . . . said Paine was happy with [him] at work." *Id.*

On June 14, Paine circulated an email to Farzan's team informing them that he "ha[d] asked Raymond to finish up open requirement threads over the next 2 weeks, at which point he w[ould] be ending his [Bridgewater] assignment." Ex. Q to Am. Compl., Doc. No. 39, at 100. He wrote that Farzan's termination was "in part driven by the current stage of the project, and in part due to feedback from the team on Raymond[']s performance and ability to both fit and be net positive to the team." *Id.* He added, "[a]ll th[at] being said, Raymond ha[d] been able to get some of the important threads locked down and ha[d] kept some of [their] machines running." *Id.* In the Amended Complaint, Farzan characterizes the statements in Paine's email as "false acquisitions [sic]." Am. Compl., Doc. No. 39, at ¶ 77.

On June 16, "to resolve [his] conflicts with Bridgewater internally to save [his] job," Farzan "emailed Employee Relations." *Id.* at ¶ 80. He spoke with an attorney from Bridgewater two days later, and again with the same attorney and Paine on June 26, but both "meeting[s] [were] useless." *Id.* at ¶¶ 80 & 81.

"In [the] early morning of [June 26, 2014]," Farzan "went to CHRO's office in Bridgeport . . . to file a complaint of discrimination against Bridgewater and Abyss." *Id.* at ¶ 89. He was told by a CHRO employee that "since [he] worked at Bridgewater's location only [he] could file a complaint against Bridgewater only," and so did not file a complaint against Abyss. *Id.* Farzan states, however, that he intended for his "complaint [to be] against both employers: Bridgewater and Abyss." *See id.* at ¶ 100.

The CHRO investigated Farzan's administrative complaint, and he "received a right to sue letter" on January 20, 2016. *See id.* That letter noted that Farzan "must bring an action in

5

Superior Court within 90 days of receipt of th[e] release" (i.e., April 19, 2016). Ex. V to Am.

Compl., Doc. No. 39, at 115. Farzan filed suit against Bridgewater, Abyss, and Paine, Oberoi,

and Welsh in Connecticut Superior Court on April 18, 2016. Am. Compl., Doc. No. 39, at ¶ 100.

Using a state marshal, Farzan served the summons and complaint on Bridgewater on May 16,

and on Abyss on May 25. Ex. A to Bridgewater's Mot. Dismiss Am. Compl., Doc. No. 40-2, at

2. Farzan served Oberoi on May 23 through Bridgewater's general counsel. *See* Yurko Decl.,

Doc. No. 40-3, at 2. Paine and Welsh assert that they have not yet been served. *See id.* at 2.

On June 15, 2016, the defendants removed Farzan's suit to this court pursuant to 28

U.S.C. §§ 1441 & 1446. Notice of Removal, Doc. No. 1. On July 15, the defendants moved to

dismiss Farzan's Complaint. Bridgewater's Mot. Dismiss Compl., Doc. No. 21; Abyss's Mot.

Dismiss Compl., Doc. No. 23. Farzan responded by filing an opposition with an Amended

Complaint attached, which I treated as a motion to amend. *See* Ex. 1 to Pl.'s Resp. Defs.' Mots.

Dismiss Compl., Doc. No. 36-1, at 9. The defendants then renewed their motions to dismiss on

October 6, Bridgewater's Mot. Dismiss Am. Compl., Doc. No. 40; Abyss's Mot. Dismiss Am.

Compl., Doc. No. 42, and Farzan opposed on October 24, Pl.'s Resp. Defs.' Mots. Dismiss Am.

Compl., Doc. No. 52. I heard oral argument on December 20, 2016. *See* Doc. No. 57.

## III.    Discussion

Because the defendants largely join each other's motions to dismiss, I will refer to all the

defendants as "Bridgewater" unless greater specificity is required. First, I will address the

motions to dismiss Farzan's Amended Complaint. Second, because "*pro se* complaints should

not be dismissed . . . 'without granting leave to amend at least once when a liberal reading of the

complaint gives any indication that a valid claim might be stated,'" *Azkour v. Bowery Residents'*

*Comm.*, 646 F. App'x 40, 40 (2d Cir. 2016) (summary order) (quoting *Shomo v. City of New*

6

*York*, 579 F.3d 176, 183 (2d Cir. 2009)), I consider whether I should permit Farzan to amend his complaint in the hopes of stating a valid claim.

### A.  Farzan's Amended Complaint

Farzan's Amended Complaint alleges 12 counts against Bridgewater and Abyss. *See* Am. Compl., Doc. No. 39. I take up each count in turn.

### 1.  *Count I: Breach of Contract*

In Count I of the Amended Complaint, Farzan claims that Bridgewater and Abyss "committed and contracted to employ [him] for at least 18 months or 78 weeks," but breached that contract by "unlawfully terminat[ing] [his] employment after 11 weeks." Am. Compl., Doc. No. 39, at ¶ 108. Bridgewater responds that "Farzan does not allege anywhere in the Amended Complaint that any specific term of a contract was breached by any Defendant," and "plainly does not state a claim for breach of contract." Bridgewater's Mem. Supp. Mot. Dismiss Am. Compl., Doc. No. 40-1, at 14.

In Connecticut, "[t]he elements of a breach of contract claim are [i] the formation of an agreement, [ii] performance by one party, [iii] breach of the agreement by the other party, and [iv] damages." *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014). "[T]he plaintiff ha[s] the burden of proving . . . that [the employer] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to him under which he could not be terminated without just cause." *Torosyan v. Boehringer lngelheim Pharms.*, 234 Conn. 1, 15 (1995). "A contract implied in fact, like an express contract, depends on actual agreement." *Burnham v. Karl & Gelb, P.C.*, 50 Conn. App. 385, 388 (1998).

Farzan's Amended Complaint does not "plausibl[y]" allege the elements for breach of an employment contract. *See Iqbal*, 556 U.S. at 678. Farzan's claim that an agreement was formed

7

primarily rests on the statement by an Abyss recruiter that he "would be working at Bridgewater at least for 18 months." Am. Compl., Doc. No. 39, at ¶ 21. That sort of vague assurance "is insufficient to establish . . . a meeting of the minds" and "actual agreement" as required by Connecticut law.[3] *See Canty v. Rudy's Limousine*, 2005 WL 2297410, at *3 (D. Conn. Sept. 15, 2005) (Droney, J.) (quoting *Pecoraro v. New Haven Reg.*, 344 F. Supp. 2d 840, 844 (D. Conn. 2004)). Farzan also points to his agreement with the recruiter "on an hourly rate increase schedule" that extended over more than one year, *see* Am. Compl., Doc. No. 39, at ¶ 21, but a promise that Farzan would be paid at a certain rate *if* he were employed more than 12 months does not constitute a promise that he *would* be employed for more than 12 months.

Moreover, Farzan's claim that Bridgewater and Abyss "committed and contracted to employ [him] for at least 18 months or 78 weeks" is contradicted by his own exhibits. *See* Am. Compl., Doc. No. 39, at ¶ 108. Although "the court must generally accept as true all of the factual assertions in the complaint, . . . there is a narrow exception to this rule for factual assertions that are contradicted by the complaint itself, [or] by documents upon which the pleadings rely." *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) (summary order) (citing *Hirsh v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)); *see Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit . . . ."). Here, the

---

[3] Farzan appears to emphasize that he was "not an independent contractor" but rather "an employee" because he believes that the latter status would represent the required "meeting of the minds" and entitle him to a permanent position at Bridgewater. Setting aside whether Farzan qualified as an "employee" under Title VII, the ADEA, or CFEPA, his characterization as an "employee" for the purposes of the anti-discrimination laws "has no bearing on how a company may internally characterize and employ workers." *See Farzan v. Genesis 10*, 619 F. App'x 15, 17 (2d Cir. 2015) (summary order). Farzan's status as a Bridgewater "'employee' for the purposes of employment and antidiscrimination laws does not entitle him to any position" at Bridgewater, "let alone a permanent one." *Id.*

Professional Service Agreement explicitly states that "Abyss or [Farzan] may terminate this Agreement at will at any time on [t]wo weeks prior notice." Ex. H to Am. Compl., Doc. No. 39, at 66. "[W]hen the exhibits contract the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). Hence, Farzan has not "plausibl[y]" stated a cause of action for breach of contract, and I therefore dismiss Count I of his Amended Complaint under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678.

2.  *Counts II & III: Wrongful Termination and Breach of the Implied Covenant of Good Faith and Fair Dealing*

In Counts II and III of the Amended Complaint, Farzan claims that Bridgewater and Abyss "wrongfully and unlawfully terminated [his] employment" and "violated [his] rights to fully benefit from [his] employment contract" by "not deal[ing] with [him] in honesty, fairly, and in good faith." Am. Compl., Doc. No. 39, at ¶¶ 109, 110. Bridgewater rejoins that those counts "must be dismissed because they are based on the same allegedly discriminatory conduct as [Farzan's] statutory discrimination claims." Bridgewater's Mem. Supp. Mot. Dismiss Am. Compl., Doc. No. 40-1, at 14.

"To state a claim for breach of the covenant of good faith and fair dealing, a plaintiff . . . 'must allege either that an enforceable employment contract exists, or that the employer's actions in discharging the employee violated a recognized public policy.'" *Canty*, 2005 WL 2297410, at *4 (quoting *Cowen v. Fed. Express Corp.*, 25 F. Supp. 2d 33, 37 (D. Conn. 1998)). As explained above, Farzan has not plausibly alleged "that an enforceable employment contract exists." *See id.* Thus, he must rely on "[the] cause of action for discharged at-will employees for breach of the implied covenant of good faith and fair dealing," which may be brought "only when the discharge is for a reason that violated public policy." *See Paul v. Bank of Am., N.A.*, 2011 WL 5570789, at *3 (D. Conn. Nov. 16, 2011).

The common law cause of action for breach of the implied covenant of good faith and fair dealing, however, may not be used "where the employee has a statutory remedy to the public policy violation." *Id.* (citing *Aukstolis v. AHEPA 58/Nathan Hale Senior Ctr.*, 579 F. Supp. 2d 314, 322 (D. Conn. 2008)). Here, the public policy violations alleged by Farzan, generously construed, are that he was subjected to unlawful race and age discrimination. *See Canty*, 2005 WL 2297410, at *5. Those violations may be redressed through actions under Title VII, the ADEA, and CFEPA. Indeed, Farzan already has made claims for violation of those statutes in his Amended Complaint. Because Farzan has statutory remedies available to remedy those public policy violations, he "may not bring . . . additional common law claim[s] for breach of the implied covenant of good faith and fair dealing" or for wrongful termination. *See id.* Therefore, I dismiss Counts II and III of the Amended Complaint under Rule 12(b)(6).[4]

### 3. *Count IV: Promissory Fraud*

In Count IV of the Amended Complaint, Farzan asserts that Bridgewater and Abyss "committed promissory fraud when they were making employment commitment[s] to [him]." Am. Compl., Doc. No. 39, at ¶ 111. Bridgewater contends that "Farzan's claim . . . does not come close to satisfying the heightened pleading requirements for a cause of action sounding in fraud," and thus fails as a matter of law. Bridgewater's Mem. Supp. Mot. Dismiss Am. Compl., Doc. No. 40-1, at 15.

To state a claim for promissory fraud under Connecticut law, a plaintiff must prove "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be

---

[4] Farzan cannot escape the requirement that he rely on a statutory remedy simply because his causes of action might be barred for failure to exhaust. Where a plaintiff has failed to exhaust administrative remedies under the antidiscrimination laws, he cannot "assert causes of action based upon violations of public policy when []he had a statutory remedy available." *Lettick v. Nationwide Mut. Ins. Co.*, 2000 WL 863028, at *8 (D. Conn. Mar. 31, 2000).

untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." *Updike, Kelly & Spellacy, P.C. v. Beckett*, 269 Conn. 613, 643 (2004). At the motion to dismiss stage, Farzan must meet "the heightened pleading standard set forth in Rule 9(b)," which requires that a party "alleging fraud or mistake . . . state with particularity the circumstances constituting fraud or mistake." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (quoting Fed. R. Civ. P. 9(b)). The Second Circuit has construed Rule 9(b) as placing upon fraud plaintiffs the "further burdens" of (i) detailing the allegedly fraudulent statements or omissions, (ii) identifying the speaker, (iii) stating where and when the statements or omissions were made, and (iv) explaining why the statements or omissions are fraudulent, as well as (v) alleging facts that give rise to a strong inference of fraudulent intent. *Id.*

Farzan's claim does not carry those "further burdens." *See id.* His claim for fraud alleges only that Bridgewater and Abyss "committed promissory fraud . . . at various degrees during [his] employment." Am. Compl., Doc. No. 39, at ¶ 111. Not only does that allegation not specify when misrepresentations were made, what was said, or which defendants (or their agents) made the misrepresentations, Farzan does not even identify any false statements of fact. Without those details, the claims "do not comply with Rule 9(b)'s mandate," and must be dismissed. *See E. Point Sys. v. Maxim*, 2014 WL 523632, at *6 (D. Conn. Feb. 7, 2014).

Generously construed, Farzan could be considered to point to statements made by the recruiter at Abyss after he "receiv[ed] . . . negative emails from [his] colleagues about [his] work." *See* Am. Compl., Doc. No. 39, at ¶ 84. The recruiter "told [him] that she had not heard anything negative . . . and [he] should focus on [his] work." *See id.* Similarly, after Farzan was

fired, he allegedly "called [the recruiter]" and "[t]o [Farzan's] surprise she said [his supervisors at Bridgewater] w[ere] happy with [his] work." *See id.* at ¶ 78.

Even if those statements were sufficiently specific to surmount the hurdle of Rule 9(b), however, Farzan does not allege other essential elements of a cause of action sounding in fraud under Connecticut law. In particular, he does not claim that the Abyss recruiter's statements were "untrue and known to be untrue" by the party making them, or "made to induce [Farzan] to act" on them. *See Datto, Inc. v. Braband*, 856 F. Supp. 2d 354, 379 (D. Conn. 2012). It is entirely possible—indeed, likely—that the recruiter really had "not heard anything negative" or genuinely had been under the impression that Farzan's supervisors "w[ere] happy with [his] work." *See* Am. Compl., Doc. No. 39, at ¶ 78. All that Farzan offers to assert otherwise are bare allegations and boilerplate characterizations, lacking any particularized or circumstantial facts to support them. *Datto, Inc.*, 856 F. Supp. at 380. Such allegations are insufficient, and so I dismiss Count IV under Rule 12(b)(6).

### 4.  *Counts V, VI, VII, & X: Federal and State Civil Rights Violations*

In Count V, Farzan asserts "[c]ommon law or constitutional cause[s] of action for discrimination based on age, race, religion, and national origin." Am. Compl., Doc. No. 39, at ¶ 112. In Counts VI, VII, and X, he similarly claims that the defendants are liable for "[f]ail[ing] to take all reasonable steps to prevent discrimination," *id.* at ¶ 113 (Count VI), "harass[ing] [him] during [his] employment . . . via public emails, phone calls, in person, and in meetings," *id.* at ¶ 114 (Count VII), and "[c]reating a hostile work environment," *id.* at ¶ 114 (Count X). Farzan accuses the defendants of violating both federal (Title VII and the ADEA) and state (CFEPA) antidiscrimination laws. *See id.* at ¶ 112.

a.   Federal Antidiscrimination Claims

With regard to Farzan's claims under Title VII and the ADEA, Bridgewater contends

those claims must be dismissed because he has not alleged that he exhausted his administrative

remedies or received a right-to-sue notice from the Equal Employment Opportunity Commission

(EEOC). Bridgewater also asserts Farzan's claims against individual defendants Paine, Oberoi,

and Welsh must be dismissed because there is no individual liability under Title VII.

i.   Individual Defendants

As an initial matter, Bridgewater is correct that Title VII does not provide for individual

liability. *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010). Hence, I dismiss Farzan's claims

against Paine, Oberoi, and Welsh under Title VII for failure to state a claim.

So too, "there is no individual liability under the ADEA." *Anderson v. Derby Bd. Of

Educ.*, 718 F. Supp. 258, 266 (D. Conn. 2010). Hence, all claims under the ADEA against Paine,

Oberoi, and Welsh must be dismissed as a matter of law.

ii.   Bridgewater and Abyss

With regard to Farzan's claims against Bridgewater and Abyss, a Title VII plaintiff

alleging that he was the victim of employment discrimination must satisfy two conditions before

commencing suit in federal court. First, he must file timely administrative charges with the

EEOC. Second, he must obtain a right-to-sue letter from the EEOC and file suit within 90 days

of receiving it. *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 213–14 (2d Cir. 2006).

The ADEA has similar requirements, permitting a claimant to bring suit in federal court

only if he has filed a timely complaint with the EEOC. *Anderson*, 718 F. Supp. at 268. No "right-

to-sue" letter is needed in ADEA cases, however, and so a complainant may exhaust the

administrative process by withdrawing agency charges so long as the charge was pending with

the EEOC for at least 60 days. *McPherson*, 457 F.3d at 214–15. Still, exhaustion of

administrative remedies through the EEOC is "an essential element" of the ADEA's statutory

scheme, and "a precondition" to bringing ADEA claims in federal court. *Legnani v. Alitalia*

*Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). A plaintiff may file suit in court

under the ADEA at any time from 60 days after timely filing a complaint with the EEOC until 90

days after receiving notice that the EEOC proceedings are terminated. *Francis v. Elmsford Sch.*

*Dist.*, 442 F.3d 123, 127 (2d Cir. 2006).

 The CHRO has a work-sharing agreement with the EEOC, whereby the CHRO may

accept complaints on behalf of the EEOC, and those complaints may be dual-filed. *See*

*Richardson v. Hartford Pub. Library*, 404 F. App'x 516, 517 (2d Cir. 2010) (summary order).

Thus, "CHRO charges are an acceptable substitute for the purposes of administrative

exhaustion." *Sawka v. ADP, Inc.*, 2014 WL 3845238, at *4 n.2 (D. Conn. Aug. 5, 2014). I

conclude that Farzan's complaint with the CHRO and receipt of a right-to-sue letter sufficed to

exhaust his administrative remedies for purposes of Title VII and the ADEA.

 Nevertheless, Farzan's federal antidiscrimination claims are barred because he did not

file suit within 90 days of receiving the right-to-sue letter.[5] Under Connecticut law—which

applies in the instant lawsuit, *see Converse v. Gen. Motors Corp.*, 893 F.2d 513, 515–16 (2d Cir.

1990)—a case is considered "brought" on the date of service of the complaint upon the

---

[5] As noted, the ADEA does not require a right-to-sue letter, but it does mandate that a plaintiff
file suit within 90 days after he or she receives notice from the EEOC that the EEOC
proceedings are terminated. *See Francis v. Elmsford Sch. Dist.*, 442 F.3d 123, 127 (2d Cir.
2006). A release of jurisdiction letter provides notice from the CHRO that the CHRO
proceedings are terminated. *See id.*; *The Complaint Process*, Comm'n on Human Rights &
Opportunities (2016), http://www.ct.gov/chro/cwp/view.asp?a=2524&q=551690&chroPNavCtr
=%7C ("After issuing[a] release [of jurisdiction], the [CHRO] will dismiss the complaint and
close the case."). Therefore, Farzan also was required to file his ADEA claims within ninety days
of receiving the right-to-sue letter.

defendant. *See John H. Kolb & Sons v. G & L Excavating*, 76 Conn. App. 599, 603 n.5 (2003). The CHRO issued a letter releasing jurisdiction over Farzan's administrative complaint on January 20, 2016. Ex. V to Am. Compl., Doc. No. 39, at 115. That letter informed Farzan that he "must bring an action in Superior Court within 90 days of receipt of this release"—i.e., April 19, 2016. *Id.* (emphasis removed). Farzan did not "bring an action" by serving his Complaint on Bridgewater until May 16, 2016. Ex. A to Bridgewater's Mot. Dismiss Am. Compl., Doc. No. 40-2, at 2. Abyss was not served until May 25. *Id.* Both dates of service fall well outside the ninety-day period required by statute, and so Farzan's Title VII and ADEA claims are both time-barred. *See McPherson*, 457 F.3d at 214.

Farzan responds that his claims are timely because he "file[d] a complaint in . . . Stamford Superior Court on [April] 18[,] 2016." Pl.'s Resp. Bridgewater's Mot. Dismiss. Compl., Doc. No. 36, at 22. But in Connecticut, a case is "brought" by serving the complaint upon the defendant, not by filing the complaint in court. *See John H. Kolb & Sons*, 76 Conn. App. at 603 n.5. And even though a state statute provides that if process is personally delivered to a state marshal within the limitations period, the marshal has an additional 30 days to make service, *see* Conn. Gen. Stat. § 52-593(a)), that provision does not avail Farzan, either. By his own admission, Farzan did not deliver the summons and complaint to the state marshal until "around May 9th," which was not within the applicable limitations period.  Pl.'s Resp. Bridgewater's Mot. Dismiss. Compl., Doc. No. 36, at 22; *cf. Cichocki v. Covenant Home*, 1997 WL 816179, at *2 (Conn. Super. Ct. Nov. 12, 1997) ("Courts have allowed suits to proceed where the plaintiff has filed affidavits from the sheriff attesting that *the sheriff received service within the time provided*." (emphasis added)). Because Farzan's Title VII and ADEA claims

were untimely, I dismiss them pursuant to Rule 12(b)(6). *See Holowecki v. Fed. Express Corp.*,

440 F.3d 558, 565 (2d Cir. 2006).

> b.   State Antidiscrimination Claims

Farzan also seeks to hold the defendants liable for violations of "State of Connecticut

Human Rights Laws, and State of Connecticut Employment Laws," Am. Compl., Doc. No. 39, at

¶ 112, which I construe as an attempt to state claims under section 46a-60 of CFEPA. That

provision reads in pertinent part:

> (a) It shall be a discriminatory practice in violation of this section:
>
>> (1) For an employer . . . to refuse to hire or employ or to bar or to
>> discharge from employment any individual or to discriminate against such
>> individual in compensation or in terms, conditions, or privileges of
>> employment because of the individual's race, color, religious creed, age,
>> sex, gender identity or expression, marital status, national origin, ancestry,
>> present or past history of mental disability, intellectual disability, learning
>> disability or physical disability . . . . .

Conn. Gen. Stat. § 46a-60(a)(1). Farzan's state civil rights claims fare no better than his

federal ones, however.

> i.   Individual Defendants

Like the federal civil rights statutes, section 46a-60(a)(1) of CFEPA does not provide for

individual liability. *See Perodeau v. City of Hartford*, 259 Conn. 729, 743–44 (2002). Therefore,

Farzan's CFEPA claims must be dismissed with regard to the individual defendants. *See*

*Anderson*, 718 F. Supp. 2d at 267.

> ii.   Bridgewater and Abyss

With respect to Bridgewater and Abyss, Farzan's CFEPA allegations, like his federal

ones, must be dismissed as untimely. A plaintiff may file an original action under the CFEPA

after obtaining a release of jurisdiction from the CHRO. *Id.* at 271. Section 46a-101(e) of the Connecticut General Statutes requires any such action to "be brought within ninety days of the receipt of the release from the [CHRO]." Conn. Gen. Stat. § 46a-101(e). Under Connecticut law, a case is "brought" on the date the complaint is served on the defendant. *See John H. Kolb & Sons*, 76 Conn. App. at 603. Failure to comply with the ninety-day deadline renders a CFEPA action "barred by the statute of limitations." *White v. Dep't of Children & Families*, 136 Conn. App. 759, 766–67 (2012).

The CHRO issued a letter releasing jurisdiction over Farzan's administrative complaint on January 20, 2016. Ex. V to Am. Compl., Doc. No. 39, at 115. That meant that Farzan was required to "bring an action" by serving his complaint upon the defendants by April 19, 2016. *See id.* (emphasis removed). Farzan did not serve Bridgewater until May 16, 2016, however, and did not serve Abyss until May 25. *See* Ex. A to Bridgewater's Mot. Dismiss Am. Compl., Doc. No. 40-2, at 2. Both dates of service fall outside the ninety-day period, and so Farzan's claims under CFEPA are "barred by the statute of limitations." *See White*, 136 Conn. App. at 767.

For purposes of CFEPA, "failure of the claimant to bring the action in a timely fashion creates a subject matter jurisdictional defect which cannot be waived by the parties or the court." *Spignolio v. Stark Carpet Corp.*, 2013 WL 6989429, at *2 (Conn. Super. Ct. Dec. 19, 2013). Because the statute of limitations had expired on Farzan's claims by the time he brought suit, his CFEPA claims against Bridgewater and Abyss are time-barred, and I dismiss them pursuant to Rule 12(b)(1). *See White*, 136 Conn. App. at 767.

5. *Count VIII: Defamation*

In Count VIII, Farzan contends that Bridgewater, Abyss, and the individual defendants "defamed [him] at various degrees during [his] employment . . . via public emails, phone calls, in

person, and in meetings." Am. Compl., Doc. No. 39, at ¶ 115. Elsewhere in the Amended

Complaint, Farzan elaborates that his supervisors "formed . . . opinion[s] about [him] based on

hearsay," were "biased against [him]," and "made false accusations against [him] in emails sent

to [his] colleagues" that "berated and humiliated [him] in public." Am. Compl., Doc. No. 39, at ¶

77. Farzan also complains that his supervisors at Bridgewater "made negative comments about

[him] because they were biased against [him]," *id.* at ¶ 82; sent "subjective," critical emails that

"were the manifestations of the hostile work environment and . . . prejudice against [him]," *id.* at

¶ 79; and held "biased subjective opinion[s] about [him]" because "[he] was much older than [his]

supervisors] and other team members [and so they] thought [he] was slow."[6] *Id.* at ¶ 85.

Bridgewater responds that any allegedly defamatory statements "are, by Farzan's own

allegations, non-actionable statements of opinion." Bridgewater's Mem. Supp. Mot. Dismiss

Am. Compl., Doc. No. 40-1, at 16. Bridgewater also argues that such statements are protected by

the qualified privilege for intracorporate communications.

To state a claim for defamation under Connecticut law, Farzan must allege that a

defendant "published unprivileged false statements that harmed the plaintiff." *Cweklinsky v.

Mobil Chem. Co.*, 297 F.3d 154, 159 (2d Cir. 2002) (citing *Torosyan*, 234 Conn. at 27). A

defamatory statement is one that "harm[s] the reputation of another as to lower him in the

estimation of the community or to deter third persons from associating or dealing with him."

*QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 356 (2001). To be actionable, however, an

allegedly defamatory statement "must convey an objective fact"—"a defendant cannot be held

liable for expressing mere opinion." *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 795 (1999).

---

[6] None of the allegedly defamatory statements was made by employees of Abyss, and so I
separately dismiss Farzan's defamation claim against Abyss for failure to state a claim. Fed. R.
Civ. P. 12(b)(6).

In the Amended Complaint, Farzan asserts that his supervisors at Bridgewater "formed . . . opinion[s] about [him]" that manifested their "subjective . . . prejudice against [him]." Am. Compl., Doc. No. 39, at ¶¶ 77, 82; *see id.* at ¶ 85 (contending that Farzan's supervisors had "biased subjective opinion[s] about [him]"). Under Farzan's own assertions, the statements about him were subjective opinions and not objective facts. *Compare id.* at ¶ 85 *with Daley*, 249 Conn. at 795. As such, they were personal comments about conduct, qualifications or character that are not actionable in defamation. Farzan's claims of defamation must fail as a matter of law.

Even if the statements were factual, moreover, a qualified privilege protects communications between managers regarding the review of an employee's job performance. *Gambardella v. Apple Health Care*, 291 Conn. 620, 630 (2009). To overcome the privilege, a plaintiff must allege "malice in fact or actual malice." *Hopkins v. O'Connor*, 282 Conn. 821, 845 (2007). Here, it is undisputed that all allegedly defamatory statements were made in the context of discussions about Farzan's performance while working at Bridgewater. The statements therefore are subject to the privilege, and because Farzan makes no allegation that the statements were made with actual malice, he has failed to overcome the privilege. *See id.* Therefore, I dismiss Farzan's defamation counts under Rule 12(b)(6) for failure to state a claim.

6.   *Count IX: Coercion and Undue Duress*

In Count IX, Farzan alleges that the defendants "subjected [him] to coercion and undue duress during [his] employment." Am. Compl., Doc. No. 39, at ¶ 116. Bridgewater replies that Count IX must be dismissed because coercion and undue duress are defenses, not viable claims.

No state recognizes a cause of action for coercion. *See Alexander Hamilton Life Ins. Co. of Am. v. James River Corp. of Va.*, 1997 WL 13053, at *5 (D. Conn. Jan. 14, 1997). Similarly,

duress "is not a substantive cause of action, but rather a defense to a breach of contract action." *Id.* Count IX fails to state a claim, and I dismiss it pursuant to Rule 12(b)(6). *See id.*

7.  *Count XI: Emotional Distress*

In Count XI, Farzan asserts that the defendants "subjected [him] to extreme and undue emotional distress during [his] employment." Am. Compl., Doc. No. 39, at ¶ 118. He claims that he "was humiliated and had to go through so much pain and suffering and emotional stress while [he] was working for Bridgewater and Abyss." *Id.* at ¶ 75. Bridgewater rejoins that Farzan's allegations of distress and humiliation based on work emails do not suffice to state a claim for either intentional or negligent infliction of emotional distress. I agree with Bridgewater, and dismiss Count XI under both theories pursuant to Rule 12(b)(6).

a.  Intentional Infliction of Emotional Distress

To assert a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." *Petyan v. Ellis*, 200 Conn. 243, 253 (1986). "Liability for intentional infliction of emotional distress requires conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious." *Johnson v. Chesebrough-Pond's USA Co.*, 918 F. Supp. 543, 552 (D. Conn.), *aff'd*, 104 F.3d 355 (2d Cir. 1996). Applying those "stringent standards" to Farzan's claims, I conclude that the defendants' alleged conduct was not so outrageous and

extreme as to be "atrocious and utterly intolerable in a civilized society." *See Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 195 (D. Conn. 2000).

Essentially, Farzan claims that his coworkers at Bridgewater "humiliated" him by "ma[king] false accusations against [him] in emails" and "berat[ing] and humiliat[ing] [him] in public." Am. Compl., Doc. No. 39, at ¶¶ 75, 77. He also complains that his "manager never met with [him] about [his] work" and "never set performance milestones with [him]." *Id.* at ¶ 76. Even if those allegations establish that Bridgewater was an unpleasant place to work, however, they do not show "extreme and outrageous behavior." *See Miner*, 126 F. Supp. 2d at 195. Connecticut courts have held that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress." *Id.* Because Farzan does not allege facts that indicate Bridgewater sent critical emails in "a humiliating, extreme, or outrageous manner," his Amended Complaint does not state a claim for intentional infliction of emotional distress. *Id.*

### b.   Negligent Infliction of Emotional Distress

Construed as a claim for negligent infliction of emotional distress, Count XI fares no better. Because some degree of emotional distress in the workplace is common, courts have hesitated to apply the tort of negligent infliction of emotional distress to employment relationships. *See Hernandez v. City of Hartford*, 30 F. Supp. 2d 268, 273 (D. Conn. 1998). Thus, in the employment context, "only conduct occurring in the process of termination can be a basis for recovery for negligent infliction of emotional distress." *Brunson v. Bayer Corp.*, 237 F. Supp. 2d 192, 208 (D. Conn. 2002). In the instant case, the allegedly humiliating emails seem to have been performance evaluations "occurring within the context of a continuing employment relationship," and therefore cannot establish a claim for negligent infliction of emotional distress.

*See Blantin v. Paragon Decision Res.*, 2004 WL 1964508, at *2 (D. Conn. Aug. 31, 2004) (Droney, J.). Construed either as a claim for intentional or negligent infliction of emotional distress, I dismiss Count XI pursuant to Rule 12(b)(6) for failure to state a claim.

### 8. *Count XII: Obstruction of Justice*

In Count XII, Farzan attempts to state a claim for "[o]bstruction of justice" on the basis that Bridgewater and Abyss "misled CHRO investigators." Am. Compl., Doc. No. 39, at ¶ 119. He alleges that Bridgewater and Abyss "intentionally failed to produce requested evidence, documents, recorded meetings, contents, records, [his] notebooks, [and] log files during CHRO investigations." *Id.* Bridgewater replies that Farzan's claim necessarily fails because there is no private cause of action for obstruction of justice.

Bridgewater is correct. "[T]here is no private cause of action for obstruction of justice." *Bromfield v. Lend-Mor Mortg. Bankers Corp.*, 2016 WL 632443, at *6 (D. Conn. Feb. 17, 2016). Rather, obstruction of justice is prohibited by "a federal criminal statute that does not give rise to a private cause of action." *Brown v. State Farm Fire & Cas. Co.*, 2013 WL 951726, at *3 (D. Conn. Mar. 12, 2013). Therefore, I dismiss Count XII for failure to state a claim.

## B. Farzan's Oral Motion to Amend

At the hearing on December 20, 2016, Farzan for the first time made reference to an "oral contract" and to another federal civil rights statute, 42 U.S.C. § 1981. I construe those references as an oral motion by Farzan to amend his complaint, and now consider whether leave to amend should be granted. *See Shomo*, 579 F.3d at 183.

"[A] *pro se* complaint is to be read liberally, and should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Id.* (internal alterations and quotation marks

omitted). Where repleading would be "futile," however, a "request to replead should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Repleading is "futile" when the problems with a plaintiff's causes of action are "substantive," such that better pleading will not cure them. *See id.* Here, Farzan's claims for breach of an oral contract and violation of section 1981 must fail as a matter of law, and would not benefit from a chance to reframe. *See id.* Even under a liberal reading, it is clear that granting leave to amend Farzan's complaint would be futile. Therefore, I will not permit Farzan to amend, and dismiss his complaint with prejudice.

   1. *Oral Contract*

   During the hearing on the motions to dismiss, Farzan suggested that oral promises were made concerning his employment that modified the Professional Service Agreement he signed with Abyss. Specifically, Farzan claims that his recruiter at Abyss told him that "[he] would be working at Bridgewater at least for 18 months" and "agreed on an hourly rate increase schedule" that extended for over one year. Am. Compl., Doc. No. 39, at ¶ 21. Farzan asserts that Abyss's breach of the recruiter's oral promise constitutes a breach of contract. I conclude that Farzan's attempted claim for breach of an oral contract must fail due to the parol evidence rule.

   In Connecticut, the parol evidence rule is "a substantive rule of contract law" that "forbid[s] the presentation of parol evidence"—that is, "evidence outside the four corners of the contract"—"to vary or contradict the terms of [an integrated] contract." *See Schilberg Integrated Metals v. Cont'l Cas. Co.*, 263 Conn. 245, 277 (2003). "A written agreement is 'integrated' and operates to exclude evidence of the alleged extrinsic negotiation if the subject matter of the latter is mentioned, covered, or dealt with in the writing." *Assoc. Catalog Merchs. v. Chagnon*, 210 Conn. 734, 740 (1989) (other internal quotation marks omitted). The rationale of the parol evidence rule is that "when the parties have deliberately put their engagements into writing," a

court must "conclusively presume[], that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing." *Schilberg Integrated Metals*, 263 Conn. at 277. Thus, oral evidence "offered solely to vary or contradict the written terms of an integrated contract is . . . legally irrelevant." *Id.* Such evidence may be admissible, though, if it (1) "does not vary or contradict the contract's terms," (2) "may be considered because the contract has been shown not to be integrated," or (3) shows that the contract should be voided or altered on "equitable grounds," such as mistake or fraud. *Id.* at 277–78.

Here, Farzan alleges the existence of an oral agreement "solely to vary or contradict" a written contract. *See id.* at 277. The Professional Service Agreement that Farzan signed with Abyss directly states that "Abyss or [Farzan] may terminate th[e] Agreement at will at any time on [t]wo weeks prior notice." *See* Ex. H to Am. Compl., Doc. No. 39, at 66, 68. By claiming that Abyss's recruiter orally bound the company not to terminate him "at any time on [t]wo weeks prior notice," Farzan attempts to introduce extrinsic evidence that directly contradicts a matter mentioned, covered, or dealt with in the writing. *See Chagnon*, 210 Conn. at 740. Because the contractual language is "clear and unambiguous" with regard to the parties' rights of termination, "the parol evidence rule bars the introduction of any extrinsic evidence or vary or contradict the plain meaning" of the written agreement. *See Schilberg Integrated Metals*, 263 Conn. at 278. Hence, it would be futile to permit Farzan to replead his allegation of breach of an oral contract.

2. *42 U.S.C. § 1981*

At the motions hearing, Farzan also invoked 42 U.S.C. § 1981, which affords "[a]ll persons within the jurisdiction of the United States . . . the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. As amended by the Civil Rights Act of 1991, "the term 'make and enforce contracts' includes

the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* Farzan appears to contend that (notwithstanding the failure of his Title VII claims) he can recover from the defendants for their allegedly discriminatory conduct under section 1981.

To state a claim under section 1981, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam). "In accordance with the understanding of the statute's drafters, 'race' for the purposes of [s]ection 1981 comprehends ethnicity." *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (en banc) (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) ("Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestral characteristics.")).

Claims of employment discrimination brought under section 1981 are governed under the same standards as those brought under Title VII. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). In particular, section 1981 claims also are subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Doe v. Columbia Univ.*, 831 F.3d 46, 56 n.9 (2016). "Because a temporary 'presumption' of discriminatory motivation is created under the first prong of the *McDonnell Douglas* analysis," in order to survive a motion to dismiss, "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (other internal quotation marks omitted).

There are a few important differences between Title VII actions and section 1981 actions, however. First, "failure to meet the jurisdictional requirements of Title VII does not preclude [a] cause of action under [section] 1981," and so Farzan's section 1981 claim does not fail merely because his Title VII claims are untimely. *See Goss v. Revlon, Inc.*, 548 F.2d 405, 407 (2d Cir. 1976). Indeed, section 1981, unlike Title VII or CFEPA, is not subject to an administrative exhaustion requirement, *Holt v. Cont'l Grp.*, 708 F.2d 87, 90 (2d Cir. 1983), and claims under section 1981 "need not be asserted within the 180- or 300-day period applicable to Title VII claims." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). Instead, the statute of limitations applicable to claims brought under section 1981 in Connecticut is three years. *See Lewis v. Conn. Dep't of Corr.*, 355 F. Supp. 2d 607, 621 n.10 (D. Conn. 2005). Second, in contrast to Title VII, individuals may be held liable under section 1981 for certain types of discriminatory acts (including those giving rise to a hostile work environment), provided that the plaintiff shows that the discrimination was intentional. *Patterson*, 375 F.3d at 226; *Albert*, 851 F.2d at 571. Finally, the coverage of Title VII is "much broader" than that of section 1981. *Smith v. Perkin-Elmer Corp.*, 373 F. Supp. 930, 936 (D. Conn. 1973) (Newman, J.). Section 1981 "was intended to combat racial or ethnic discrimination, nothing more." *Albert*, 851 F.2d at 572. Unlike Title VII, section 1981 does not protect the characteristics of gender, sexual orientation, or family background, *see id.*, nor does it bar discrimination based solely on national origin or religion. *See Al-Khazraji*, 481 U.S. at 613.

Applying those principles to the present case, I hold that Farzan's *pro se* complaint fails to meet the very low standard of giving "any indication that a valid claim might be stated" for violation of section 1981. *See Cuoco*, 222 F.3d at 112. To be sure, Farzan clearly alleges discrimination concerning one or more of the activities enumerated in the statute, specifically,

"the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *See Mian*, 7 F.3d at 1097; 42 U.S.C. § 1981. And Farzan also attempts to assert that he is a member of a racial minority and that at least one of the defendants intended to discriminate on the basis of race.[7] *See Mian*, 7 F.3d at 1097. What Farzan does not do, however, is allege any conduct rising above the level of "stray remarks," which do not constitute evidence sufficient a case of employment discrimination. *See Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998).

Of the discriminatory incidents alleged by Farzan, almost all clearly pertain to his "age, national origin, [or] religion," characteristics not protected by section 1981. *See* Am. Compl., Doc. No. 39, at ¶ 54; *see, e.g.*, *id.* at ¶ 55 (alleging that Paine "thought [Farzan] was not a good fit to his team" because he declined "alcoholic drinks" due to his Muslim faith), ¶ 60 (claiming that Welsh "asked [Farzan] about [his] national origin" and "made fun of [his] national origin"); ¶ 67 (alleging that "Oberoi told [Farzan] . . . that [he] was an old Muslim and [he] did not belong [at] Bridgewater"), ¶ 74 (claiming that Paine "terminated [Farzan's] employment [because] he

---

[7] "Race," for the purposes of section 1981, "comprehends ethnicity," but not "nation of origin" or "religion." *See Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (en banc); *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Although that distinction seems easier to apply in theory than in practice, *see Deravin v. Kerik*, 335 F.3d 195, 201–02 (2d Cir. 2003) ("[R]ace and national origin discrimination claims may substantially overlap or even be indistinguishable depending on the specific facts of a case."), at least one court in this circuit has held that a section 1981 retaliation claim survived a motion to dismiss when the plaintiff had been fired after complaining about a coworker's statement that "while such comments might be acceptable in Iran, they were unacceptable in the United States." *See Hexemer v. Gen. Elec. Co.*, 2013 WL 4854350, at *1 (N.D.N.Y. Sept. 11, 2013). Another court implied that a plaintiff's allegation that he was "Iranian-American" sufficed to allege facts supporting that he was "a member of a racial minority." *See Yoonessi v. N.Y. State Bd. for Prof'l Med. Conduct*, 2005 WL 645223, at *24 (W.D.N.Y. Mar. 21, 2005), *aff'd*, 162 F. App'x 63 (2d Cir. 2006) (summary order). Reading those decisions together, I conclude that allegations by Farzan that he was discriminated against because he is ethnically Iranian would fall within the ambit of section 1981, but allegations that he was discriminated against because he is Muslim or from Iran—to the extent the latter differs from being ethnically Iranian—would not.

thought [Farzan] was a security risk because [he] was born in Iran," and that Paine "did not want [a] security consultant to find out about [Farzan's] national origin"). Only the alleged statement by Welch that "Iranians are shitty people" arguably attacks Farzan's ethnicity rather than his national origin. *See* Am. Compl., Doc. No. 39, at ¶ 60; *Albert*, 851 F.2d at 572.

But Welch's insult, which Farzan admits was made no more than a "couple of times," Am. Compl., Doc. No. 39, at ¶ 60, clearly constitutes the kind of "stray remark" that "cannot prove a claim of employment discrimination." *See Abdu-Brisson v. Delta Air Lines*, 239 F.3d 456, 468 (2d Cir. 2001); *Salemi v. Colo. Pub. Emps. Ret. Ass'n*, 176 F. Supp. 3d 1132, 1148 (D. Colo. 2016) (a "single comment" about "what women in Iran would do in Plaintiff's situation . . . does not rise to the level of intentional discrimination"). Welsh appears to have been Farzan's co-worker, not a decision-maker or supervisor. *See Rajaravivarma v. Bd. of Trs. for Conn. State Univ. Sys.*, 862 F. Supp. 2d 127, 152 (D. Conn. 2012); *Afkhami v. Carnival Corp.*, 305 F. Supp. 2d 1308, 1320 (S.D. Fla. 2004) (statement that the plaintiffs "are Iranian, but they're nice" did not suffice to allege a section 1981 claim because the statement was not made by a decision-maker). Moreover, his insulting comment about Farzan's race was not made in relation to any employment decision and was not related to the decision-making process. *See Rajaravivarma*, 862 F. Supp. 2d at 152. Farzan does not claim that Paine, the actual decision-maker, was even aware of Welsh's insult, much less that the remark had any tendency to show that Paine was motivated by assumptions or attitudes relating to Iranian-Americans.[8] *See id.* Hence, Welsh's alleged racist statement alone is not enough to allege a plausible violation of section 1981.

---

[8] Also strongly suggesting that "invidious discrimination was unlikely" is that Paine—who fired Farzan—also had interviewed and hired him less than three months earlier. *See Grady v. Affiliated Cent.*, 130 F.3d 553, 560 (2d Cir. 1997) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire. Th[at] is especially so

Although a *pro se* complaint must be liberally construed to raise the strongest arguments it suggests, "*pro se* parties are not excused from abiding by the Federal Rules of Civil Procedure." *Wilks v. Elizabeth Arden, Inc.*, 507 F. Supp. 2d 179, 185 (D. Conn. 2007). Here, even construing Farzan's allegations liberally and in the manner most favorable to him, I cannot discern facts sufficient to "state a claim to relief that is plausible on its face" or to carry Farzan's "minimal burden to show discriminatory intent." *See Iqbal*, 556 U.S. at 678; *Columbia Univ.*, 831 F.3d at 55. The problems with Farzan's causes of action are "substantive," and better pleading will not cure them. *See Cuoco*, 222 F.3d at 112. Thus, I conclude that repleading would be futile and that Farzan's oral motion to replead should be denied. *See id.*

## IV.     Conclusion

For the reasons stated, I grant Bridgewater's and Abyss's motions to dismiss. Because repleading would be futile, leave to amend is denied, and I dismiss Farzan's Amended Complaint with prejudice. The Clerk shall enter judgment for the defendants and close the case.


So ordered.

Dated at Bridgeport, Connecticut, this 24th day of January 2017.


/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

when the firing has occurred only a short time after the hiring."); Am. Compl., Doc. No. 39, at ¶¶ 13, 17, & 78.